**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────────

**KENT DONLEY,**

                                    **Plaintiff,**

          **vs.**                                         **6:14-CV-1324**
                                                          **(MAD/ATB)**

**VILLAGE OF YORKVILLE, NEW YORK;**
**ANTHONY C. LEONE, JR.; MICHAEL MAXAM;**
**MICHAEL A. MAHONEY; JAMES G. COLLEA;**
**THOMAS J. THOMAS; CHARLIE CAREY; and**
**JOHN DOE(s) AND JANE DOE(s),**

                                    **Defendants.**

─────────────────────────────────────────

**APPEARANCES:**                         **OF COUNSEL:**

**A.J. BOSMAN LAW FIRM**                  **A.J. BOSMAN, ESQ.**
201 West Court Street
Rome, New York 13440
Attorney for Plaintiff

**MACKENZIE HUGHES LLP**                  **CHRISTIAN P. JONES, ESQ.**
440 S. Warren Street, Suite 300
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Kent Donley ("Plaintiff") brought this action under 42 U.S.C. § 1983, the

Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Uniformed Services

Employment and Reemployment Rights Act ("USERRA"), the New York State Human Rights

Law ("NYSHRL"), the New York State Constitution, and purportedly under Article 78 of the

New York Civil Practice Law and Rules ("CPLR").  Plaintiff claims that defendants Village of

Yorkville, New York; Anthony C. Leone, Jr.; Michael Maxam; Michael A. Mahoney; James G.

Collea; Thomas J. Thomas; and Charlie Carey (collectively, "Defendants") violated the aforementioned laws by discriminating against Plaintiff on the basis of his alleged disability. Before the Court is Defendants' motion for summary judgment and Plaintiff's opposition to that motion. For the following reasons, Defendants' motion for summary judgment motion is granted, and Plaintiff's case is dismissed in its entirety.

## II. BACKGROUND

The Village of Yorkville Police Department hired Plaintiff as a part-time police officer in November 2010. *See* Dkt. No. 74-17 at ¶ 1. This position falls within the "non-competitive class" under the New York Civil Service Law. *Id.* at ¶ 7. Plaintiff had previously been employed by the Oneida County Sheriff's Department ("Sheriff's Department") from 2005 to 2008. *See id.* at ¶ 2. During his employment there, Plaintiff was indicted on a charge of criminal mischief after he had a dispute with the mother of his child, Ms. Jessamyn Harter, which resulted in damage to Ms. Harter's laptop computer. *See id.* at ¶ 3. Plaintiff contends that the Sheriff's Department asked the District Attorney to bring the indictment "as leverage to force a resignation from [P]laintiff." *Id.* After Plaintiff and the Sheriff's Department completed arbitration, the Sheriff's Department terminated Plaintiff and the District Attorney dropped the criminal mischief charge. *See id.* at ¶¶ 3-4.

Although the Village is a party to a collective bargaining agreement with the police union for full-time police officers, this agreement does not apply to part-time officers. *Id.* at ¶¶ 8-9. Defendants typically scheduled Plaintiff for two shifts per week, or roughly sixteen hours per week. *Id.* at ¶ 11. Defendants assert that part-time officers are hired and scheduled on an as-needed basis in conjunction with officer availability, but Plaintiff asserts that, despite his

availability, he was not scheduled—and instead, new officers were hired—because of his service-related PTSD. *Id*. at ¶ 10.

On July 5, 2011, the Village Mayor and the Board of Trustees were presented with a written complaint from a resident regarding an incident with Plaintiff. *Id*. at ¶ 12. The complaint alleged that Plaintiff had approached the resident and her daughter in the resident's fenced-in backyard at approximately 10:30 p.m., and that Plaintiff had shined a flashlight at them without identifying himself. *Id*. at ¶ 13. It further alleged that Plaintiff had threatened to shoot their dogs if they did not bring them inside the house. *Id*. Plaintiff asserts that he never threatened to shoot anyone's dogs and that he was not disciplined as a result of the complaint. *Id*.

On December 7, 2011, a Senior Probation Officer from Madison County contacted the Village Police Department and advised Officer Maxam, a Yorkville police officer, that Plaintiff had an Order of Protection issued against him by the mother of his child, Ms. Harter. *Id*. at ¶ 15. When Officer Maxam later spoke to Ms. Harter, she explained to him that Plaintiff had sent her a series of text messages and emails causing her to fear Plaintiff would harm himself. *Id*. at ¶ 18. Plaintiff asserts that these text messages were fabricated and that the emails were taken out of context. *Id*. at ¶¶ 19-20. Officer Maxam contacted Mayor Leone to inform him of the situation and was instructed to speak with the Village Attorney, John Dillon. *Id*. at ¶ 21. Dillon instructed Officer Maxam to remove Plaintiff from the work schedule and have him turn in his Village-issued weapon. *Id*. at ¶ 22. A short time later, Officer Maxam learned that Plaintiff's ex-girlfriend had recanted parts of her story, and thus the temporary order of protection had been vacated. *Id*. at ¶ 24. Although Dillon knew of this change, he had decided not to restore Plaintiff to the work schedule because he believed that allowing Plaintiff to continue performing duties as a police officer would pose a risk to the Village. *Id*. at ¶¶ 26-27.

Dillon, the Mayor, and the Village Board discussed alternatives to termination and requested that Plaintiff undergo a psychological evaluation, to which Plaintiff consented. *Id*. at ¶¶ 30-31. Dr. Toby Davis, a psychologist, performed this fitness-for-duty evaluation and issued his report to Dillon on June 7, 2012. *Id*. at ¶¶ 32-33. The Oneida Country Sheriff's Department subsequently sent Plaintiff's records to Dr. Davis, who issued an amended report with more explicit reference to Plaintiff's prior employment. *Id*. at ¶ 36. This report did not diagnose Plaintiff with any mental, emotional, or psychological disorders, but it did state that Plaintiff exhibited various personality traits, "including narcissism, a sense of entitlement, a sense of projective power due in part to his position as a Police Officer, lack of self-awareness, and diminished self-monitoring ability." *Id*. at ¶ 37. The report ultimately concluded that Plaintiff's personality traits put him "at risk for continued errors in judgment." *Id.* Plaintiff argues that the report's emphasis on personality traits is a pretext for discriminating against Plaintiff's alleged PTSD. *Id.* There is no indication that this report was ever made public or shown to anyone other than Dillon and possibly Defendant Leone.

### III. DISCUSSION

**A.    Legal Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.    ADA, Rehabilitation Act, and New York Human Rights Law**

To establish discrimination under the ADA, Rehabilitation Act, and the NYSHRL, "a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances surrounding the employment action that give rise to an inference of discrimination." *Fahrenkrug v. Verizon Servs. Corp.*, 652 Fed. Appx. 54, 56 (2d Cir. 2016) (citing *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106-07 (2d Cir. 1989)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 316 (2004) (holding that the *McDonnell Douglas* framework applies to discriminatory discharge claims brought pursuant to the NYSHRL) (citations omitted).

Discrimination claims are evaluated pursuant to the burden-shifting analysis articulated in *McDonnell Douglas*, 411 U.S. at 802-03.

> Under *McDonnell Douglas*, the plaintiff bears the initial burden of
> establishing a *prima facie* case of discrimination. 411 U.S. at 802,
> 93 S. Ct. 1817. If the plaintiff does so, the burden shifts to the
> defendant to articulate "some legitimate, nondiscriminatory reason"
> for its action. *Id.* Once such a reason is provided, the plaintiff can
> no longer rely on the *prima facie* case, but may still prevail if she
> can show that the employer's determination was in fact the result of
> discrimination.

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

To rebut the defendant's articulated justification for the adverse employment action, "the plaintiff must show *both* that the [defendant's] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted). However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment. *See Diggs v. Niagara Mohawk Power Corp.*, No. 1:14-CV-244, 2016 WL 1465402, *6 (N.D.N.Y. Apr. 14, 2016) (citing *Holcomb*, 521 F.3d at 137); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (holding that "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment").

### 1. Plaintiff's Prima Facie Case

To establish a *prima facie* case of discrimination, the plaintiff must establish "(1) that []he is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the [anti-discrimination] Acts; and (3) that []he was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability.'" *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) (quotation omitted).

The term "individual with a disability" means an individual who has "a physical or mental impairment that substantially limits one or more major life activities" or who is "regarded as having such an impairment." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1). The "regarded as" clause requires a plaintiff to establish "that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The "regarded as" clause does not apply "to impairments that are transitory and minor." A transitory impairment" is one "with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Under regulations promulgated by the EEOC, mental impairment is defined as "[a]ny mental or psychological disorder, such as an intellectual disability . . ., organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. 1630.2(h)(2). "By contrast, 'common personality traits such as poor judgment or a quick temper' are not themselves impairments if they are not 'symptoms of a mental or psychological disorder.'" *Bruzzese v. Sessions*, 725 Fed. Appx. 68, 71 (2d Cir. 2018) (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(h) (2016)).

In the present matter, Defendants contend that Plaintiff is not an individual with a disability within the meaning of the ADA, Rehabilitation Act, or the NYSHRL. *See* Dkt. No. 64-22 at 17-20. Specifically, Defendants argue that Plaintiff cannot establish that he was regarded or perceived as having a disability. *See id.* at 19. Defendants contend that "Dr. Davis did not diagnose Plaintiff with any mental, psychological, or emotional disorder or illness, but he did find that Plaintiff exhibited various personality traits, including narcissism, a sense of entitlement, a sense of projective power due in part to his position as a Police Officer, lack of self-awareness,

and diminished self-monitoring ability – all of which placed him at risk for continued errors in judgment." *Id.* (citations omitted). As such, Defendants claims that "Village Attorney Dillon did not conclude Plaintiff suffered from a disability, but he did reasonably conclude Plaintiff's personality traits put him at risk for poor decision making and errors in judgment, which in turn posed a serious liability risk to the Village." *Id.* (citation omitted).

In response, Plaintiff contends that "Defendants conspicuously avoid the direct evidence that they perceive Plaintiff has [sic] having PTSD form his military service." Dkt. No. 74-18 at 10. Specifically, Plaintiff argues that, at his deposition, "Plaintiff testified that he was told by Defendant Maxam that the Village Board felt that he might suffer from combat related PTSD. This statement was made to Plaintiff during a conversation as to why the Village Board was not allowing Maxam to schedule Plaintiff for work." *Id.* (citing Dkt. No. 74-12 at 100-01). Plaintiff claims that, even if this direct evidence was insufficient, his claim is supported by "more than sufficient circumstantial evidence to show a question of fact as to whether Defendants perceive Plaintiff as having a mental or psychological disorder." *Id.* at 11. This evidence includes the consent form Defendants had Plaintiff sign for the psychiatric/mental health fitness-for-duty evaluation and the fact that Defendant Leone acknowledged that the fitness-for-duty examination was to examine Plaintiff's mental stability. *See id.* (citations omitted). Further, Plaintiff points to the fact that Defendants "indisputably rely on Dr. Davis' reports which are 'medical reports' governed by the ADA." *Id.* "Defendants' attempt to cast the evaluation as one testing for mere personality traits so as to render their reliance on same outside the strictures of the ADA is completely disingenuous." *Id.* at 12.

In *Bruzzese v. Lynch*, 191 F. Supp. 3d 237 (E.D.N.Y. 2016), *aff'd,* 725 Fed. Appx. 68 (2d Cir. 2018), the plaintiff was a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"). The plaintiff's immediate supervisor became concerned about the plaintiff's mental health following a series of workplace incidents, including alleged suicidal comments and reports of the plaintiff's hands shaking uncontrollably. *See id.* at 240-41. As a result, the plaintiff was ordered to surrender his firearm, was temporarily reassigned to a position where he would not participate in law enforcement operations, and was ordered to undergo a fitness-for-duty evaluation. *See id.* at 241. The fitness-for-duty evaluation concluded that, while the plaintiff did not suffer from a mental health condition or personality disorder, he did evince certain personality characteristics that "appear to increase the safety risks for himself and other in the performance of the job[.]" *Id.* Based on these findings, the ATF permanently reassigned the plaintiff to a non-law enforcement position. *See id.* at 241-42.

The plaintiff later filed a disability discrimination lawsuit pursuant to the Rehabilitation Act, alleging that the ATF perceived him as being disabled and took adverse employment actions against him based upon his perceived disability. *See id.* at 242-43. In analyzing whether the plaintiff met his *prima facie* burden of showing that he was disabled within the meaning of the Rehabilitation Act, the district court held that the "plaintiff is not correct that histrionic and narcissistic personality traits may meet the definition of 'emotional or mental illness.'" *Id.* at 247. Rather, the court found that they were simply personality traits or behaviors that could reasonably be construed by the ATF as reflecting only poor judgment. *See id.* Further, the court noted the fact that his immediate supervisor expressed concern for the plaintiff's "mental and emotional health does not mean he regarded plaintiff as having a disability protected under the law." *Id.* As a result, the district court held that the plaintiff did not qualify as "an individual with a disability" under the law and the plaintiff failed to introduce evidence that the defendants perceived him as having such a disability. *See id.* On appeal, the Second Circuit affirmed, finding that there was

no genuine issue of material fact as to whether the plaintiff was regarded or perceived as disabled. *See Bruzzese v. Lynch*, 725 Fed. Appx. 68, 71-72 (2d Cir. 2018).

Here, as in *Bruzzese*, Dr. Davis found that Plaintiff exhibited various traits, including narcissism, a sense of entitlement, a sense of projective power due in part to his position as a police officer, lack of self-awareness, and diminished self-monitoring ability, all of which placed him at risk for continued errors in judgment. *See* Dkt. No. 71 at 11-13. He did not, however, make a finding that these personality traits were symptomatic of any mental, psychological, or emotional disorder. In fact, Dr. Davis did not diagnose Plaintiff with any mental, psychological, or emotional disorder at all, and Plaintiff does not in fact suffer from any type of mental illness. As such, as in *Bruzzese*, Plaintiff's personality traits do not constitute a disability.

Moreover, the Court finds that Plaintiff's claim of direct evidence that he was regarded as suffering from PTSD is unavailing. Plaintiff's only evidence in support of this claim is a single statement in his own deposition that, at some point in time, Officer in Charge Maxam informed him that "the board was under the assumption that I maybe suffer from PTSD from service in Iraq[.]" Dkt. No. 74-12 at 101. As Defendants correctly contend, this vague statement falls short of the proof required to defeat summary judgment. *See Bruzzese*, 725 Fed. Appx. at 72; *see also Pena v. City of Flushing*, 651 Fed. Appx. 415, 420 (6th Cir. 2016) (holding that "an employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled") (quotation omitted).

Moreover, the fact that Plaintiff was ordered to undergo fitness-for-duty evaluation, specifically to a "psychiatric/mental health evaluation," does not support Plaintiff's contention that Defendants regarded him as disabled. Courts have consistently found that ordering an employee to undergo a fitness-for-duty evaluation for valid reasons "can neither count as an

adverse job action nor prove discrimination." *Pena*, 651 Fed. Appx. at 422 (quotation omitted);

*Eustace v. South Buffalo Mercy Hosp.*, 36 Fed. Appx. 673, 674-75 (2d Cir. 2002). Plaintiff has

not even questioned whether Defendants' decision to order him to undergo a fitness for duty exam

was for an invalid reason. *See id.* at 420, 422; *Anaissie v. Univ. of Cincinnati Physicians, Inc.*,

No. 1:15-cv-701, 2018 WL 1456102, *6 (S.D. Ohio Mar. 23, 2018).

Additionally, Mr. Dillon testified that he indicated to Defendant Mayor Leone that, based

upon the results of the of Dr. Davis' evaluation, he believed that allowing Plaintiff to work as a

police officer created a serious liability risk for the Village. *See* Dkt. No. 64-21 at ¶ 41; Dkt. No.

64-13 at ¶ 18. Although Mayor Leone does not recall whether he viewed the evaluation report, he

does recall discussing it with Mr. Dillon and that Mr. Dillon viewed Plaintiff as a liability risk

based on the personality traits identified in the reports. *See* Dkt. No. 64-18 at ¶ 12.

As Officer in Charge, Defendant Maxam had the authority to discipline, but not to

terminate or to hire new officers. *See* Dkt. No. 74-7 at 23-24. Rather, it was up to the Village

Board of Trustees to hire and terminate police officers. *See id.* When an issue with an officer

would arise, Defendant Maxam would notify Mayor Leone, who would then present it to the

Village Board for action, as happened in the present matter. *See id.* at 24-26. When presented

with Mr. Dillon's concerns regarding Plaintiff's potential as a liability risk, the Village Board and

Mayor Leone deferred to his judgment and removed Plaintiff from the part-time police officer

schedule. Given that nothing in the record supports the conclusory assertion that Plaintiff was

regarded as disabled by Mr. Dillon (or any of the named Defendants), Plaintiff has failed to set

forth a *prima facie* case of discrimination. *See Bruzzese*, 725 Fed. Appx. at 72 ("To determine

whether a plaintiff's employer regards her as disabled, we look primarily to the views of the

person who made the decision to take adverse employment actions, rather than those of other supervisors or employees").

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's disability discrimination claims under the ADA, the Rehabilitation Act, and the NYSHRL.

### 2. Legitimate, Non-Discriminatory Reason

In the alternative, even assuming that Plaintiff had met his *prima facie* burden, his disability discrimination claims are still subject to dismissal because Defendants have established a legitimate, non-discriminatory reasons for permanently removing Plaintiff from the work schedule, and Plaintiff has not offered any non-conclusory evidence demonstrating that those reasons were pretextual. As the Court noted in *Bruzzese*, "[t]he critical question is whether there is evidence showing that the decision to [remove Plaintiff from the work schedule] was made because it was believed that [P]laintiff had a protected mental disability." *Bruzzese*, 191 F. Supp. 3d at 248. No such evidence exists. Rather, as discussed in more detail above, the evidence indicates that the decision to permanently remove Plaintiff from the schedule was made because of Plaintiff's personality characteristics, which do not rise to the level of a clinical disorder, but were sufficient to cause serious liability concerns should Plaintiff continue in his position as a police officer. These personality traits, coupled with Defendants concerns over Plaintiff's history of disciplinary issues in his previous positions, clearly establish that Defendants did not take this adverse employment action because they regarded Plaintiff as having a mental disorder.

Since Plaintiff has failed to establish a question of fact as to whether Defendants' legitimate, non-discriminatory reasons for the adverse employment action were pretextual, the Court dismisses Defendants' disability discrimination claims under the ADA, Rehabilitation Act, and NYSHRL on this alternative ground.

**C.      USERRA and NYSHRL Military Status Discrimination**

USERRA prohibits employment discrimination on the basis of an employee's membership and service in the uniform services of the United States and establishes certain reemployment rights following such service. *See Woodard v. New York Health and Hosp. Corp.*, 554 F. Supp. 2d 329, 347 (E.D.N.Y. 2008). "The purpose of USERRA is to encourage military service 'by eliminating or minimizing the disadvantages to civilian careers'; 'to minimize the disruption to the lives' of service members and their employers 'by providing for the prompt reemployment' of service members; and 'to prohibit discrimination' against service members." *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 174 (2d Cir. 2011) (quoting 38 U.S.C. § 4301(a)).

The evaluation of alleged violations of USERRA follow the two-step burden-shifting framework for actions under the National Labor Relations Act, set forth in *NLRB v. Transportation Management Corp.*, 462 U.S. 393 (1982). *See Gummo v. Village of Depew, N.Y.*, 75 F.3d 98, 106 (2d Cir. 1996) (citing N.R. Rep. No. 65, 103d Cong., 2d Sess. 18, 24 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 2449, 2457). First, the plaintiff bears the "burden of proving a *prima facie* case of discrimination by showing, by a preponderance of the evidence, that his protected status was a 'substantial or motivating factor in the adverse [employment] action.'" *Id.* (quoting *Transportation Management*, 462 U.S. at 401). If the plaintiff meets his *prima facie* burden, then the burden shifts to the employer to "show[ ], as an affirmative defense, that it would have made the same decision without regard to the employee's protected status." *Id.* "Both the burden of production and the burden of persuasion shift to the employer under this framework," and the employer must prove that it "would have taken the same action based on other reasons alone, without regard to the employee's protected status." *Woodard*, 554 F. Supp. 2d at 349 (citing *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 554, 551 (8th Cir. 2005)).

"Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Id.* at 348 (quoting *Fink v. City of New York*, 129 F. Supp. 2d 511, 520 (E.D.N.Y. 2001)). "Discriminatory motivation may be proven through direct or circumstantial evidence, including but not limited to 'proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, [or] disparate treatment....'" *Id.* at 348-49 (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)). Temporal proximity, standing alone, is insufficient to give rise to an inference of discriminatory motivation when the adverse action was preceded by a period of progressive discipline that began before the protected activity. *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

In addition to USERRA, the NYSHRL makes it unlawful for an employer to discriminate "in compensation or in terms, conditions or privileges of employment" "because of" an individual's military status. N.Y. Exec. Law § 296(1)(a). To establish a *prima facie* case of discrimination under the NYSHRL, a plaintiff must show that he was a member of a protected class who was performing his job duties satisfactorily, and that he suffered an adverse employment action under circumstances that give rise to an inference of discrimination. *See Caines v. City of New York*, No. 13-cv-676, 2015 WL 13021892, *6 (S.D.N.Y. July 7, 2015) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)).

In the present matter, Plaintiff has failed to put forth any evidence that would suggest that his military status was a factor, let alone a substantial or motivating factor, in his removal from the work schedule. Rather, Plaintiff has offered only the conclusory allegation that Defendants perceived him "as having a mental disability because of his military service." Such a conclusory

allegation is insufficient to sustain Plaintiff's evidentiary burden. *See Hunt v. Klein*, 476 Fed. Appx. 889, 891 (2d Cir. 2012) (holding that the plaintiff's "conclusory allegations that various employment actions taken against him violated USERRA were insufficient to state a claim under that statute because he provided no supporting facts upon which it could plausibly be inferred that his military service or any protected activity was a 'substantial or motivating factor in the adverse [employment] action[s]'") (quotation omitted).

Further, even assuming that Plaintiff had set forth a *prima facie* case, Defendants have met their burden of showing that they would have removed Plaintiff from the work schedule without regard for his military status because of the personality traits identified by Dr. Davis. Plaintiff has not argued that he was discriminated against on the basis of his military service, only that he was discriminated against on the basis of his service-related disability. *See* Dkt. No. 74-18 at 20. Plaintiff rightfully devotes little time attempting to salvage this claim. Plaintiff has not alleged, argued, or otherwise shown discrimination on the basis of his military status and the Court accordingly dismisses these claims.

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's USERRA and NYSHRL claims alleging discrimination based on his military status.

## D. Procedural Due Process

### *1. Property Interest*

In order to prevail on a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983, "the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001)). "Property rights arise from 'an independent

source such as state law, [with] federal constitutional law determin[ing] whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'" *Pilchen v. City of Auburn, N.Y.*, 728 F. Supp. 2d 192, 198 (N.D.N.Y. 2010) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)) (other quotation marks and citation omitted) (alterations added by *Pilchen*). The essential principle of procedural due process is that a deprivation of life, liberty or property should be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). However, "[w]here there is a meaningful postdeprivation remedy, there is no due process violation." *Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir. 1998). To demonstrate a property interest in continued employment, the claimant must demonstrate that, under a state statute or collective bargaining agreement, the employee cannot be terminated without a hearing. *See Rotundo v. Village of Yorkville*, No. 6:09-CV-1262, 2011 WL 838892, *8 (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313-14 (2d Cir. 2002)).

Here, the parties agree that Plaintiff was not covered by the PBA collective bargaining agreement. *See* Dkt. No. 74-17 at ¶ 9. Thus, Plaintiff must demonstrate that his property interest in continued employment is granted by state statute. *See Rotundo*, 2011 WL 838892, at *8. Plaintiff argues that he has the right to a termination hearing pursuant to Section 75(1)(c) of the New York Civil Service Law. *See* Dkt. No. 74-18 at 21-22. The statute provides that employees in the non-competitive class who have completed five years of continuous service in the non-competitive class are entitled to a pre-termination hearing. *See* N.Y. Civ. Serv. Law § 75(1)(c). Plaintiff was hired by the Village of Yorkville in November of 2010. *See* Dkt. No. 74-17 at ¶ 1. This action was commenced on July 22, 2014. *See* Dkt. No. 1. At the time this action was commenced, Plaintiff had less than five years of continued employment in the non-competitive

class and did not qualify for a termination hearing under section 75(1)(c). Because Plaintiff had not satisfied the statutory conditions, he had no property interest in his continued employment.

Plaintiff attempts to save his Section 1983 property interest claim from dismissal by arguing that his non-competitive class position matured into one subject to Section 75 in November 2015, because he was never formally fired. *See* Dkt. No. 74-18 at 22. As Defendants correctly note, however, the question as to whether Plaintiff qualified for Section 75 protection in November 2015 is not properly before this Court because Plaintiff did not raise this claim in his original complaint or seek to file an amended complaint. *See Russell v. Cnty. of Nassau*, 696 F. Supp. 2d 213, 228 n.10 (E.D.N.Y. 2010).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's property interest procedural due process claim.

### 2. Stigma Plus

There is no constitutionally protected property or liberty interest in one's reputation alone. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (citation omitted); *Paul v. Davis*, 424 U.S. 693, 701 (1976). However, when an individual is defamed or stigmatized in the course of his dismissal from public employment, he does have a cognizable liberty interest. *See Codd v. Velger*, 429 U.S. 624, 627 (1977); *Paul*, 424 U.S. at 701 & 710. This claim, which is known as a "stigma-plus" claim, is accorded only procedural due process protection—specifically, the right to an opportunity to refute the charges and clear one's name and reputation. *See Codd*, 429 U.S. at 627; *Paul*, 424 U.S. at 710; *Roth*, 408 U.S. at 573. A stigma-plus due process claim requires a plaintiff to establish "(1) the utterance of a statement about her that is injurious to her reputation, 'that is capable of being proved false, and that he or she claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'" *Velez v. Levy*, 401

17

F.3d 75, 87 (2d Cir. 2005) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, *Conn. Dep't. of Pub. Safety v. Doe*, 538 U.S. 1 (2003)).

"Stigmatizing statements" are those statements that "'call into question [the] plaintiff's good name, reputation, honor, or integrity'" or "'denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession.'" *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (quotations omitted). The defamatory statement "must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest." *Velez*, 401 F.3d at 87 (citing *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631-32 (2d Cir. 1996)). Finally, the plaintiff must show that the stigmatizing statements were made in the course of, or in close temporal proximity to, a discharge or significant demotion. *See Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (stating that the "plaintiff must show the stigmatizing statements were made concurrently in time to plaintiff's dismissal"). "A negative impact on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation, is insufficient." *Boss v. Kelly*, 306 Fed. Appx. 649, 651 (2d Cir. 2009) (internal quotation marks and citation omitted).

Article 78 name-clearing hearings are all the process due to a former municipal employee in Plaintiff's position. For example, in *Hennigan v. Driscoll*, No. 5:06-cv-426, 2009 WL 3199220 (N.D.N.Y. Sept. 30, 2009), the plaintiff was hired by the Syracuse Police Department as a probationary police officer. *See id.* at *3. After a newspaper article was published regarding an incident involving the plaintiff during his previous employment, the plaintiff resigned his

position.  *See id.*  Several days later, the plaintiff sought to rescind his resignation and requested a post-termination hearing.  *See id.*  The police chief denied both requests and further informed the plaintiff that "post-termination hearings did not apply to resignations."  *Id.* at *3-4.  In granting the defendants' motion for summary judgment, the court held that the plaintiff's stigma plus claim fails because he had available to him an Article 78 proceeding.  *See id.* at *11.  Further, the court noted that the Syracuse Police Department was not required to notify the plaintiff of his option to pursue and Article 78 proceeding.  *See id.*

In *Walsh v. Suffolk County Police Dept.*, No. 06-cv-2237, 2008 WL 1991118 (E.D.N.Y. May 5, 2008), during the plaintiff's terms as a probationary police officer, it was discovered that the plaintiff failed to disclose a prior criminal investigation by a different police department.  *See id.* at *1.  As a result, the defendants sought and obtained the plaintiff's resignation.  *See id.*  In granting the defendants' motion for summary judgment on the plaintiff's stigma plus claim, the court held that the plaintiff's failure to bring an Article 78 proceeding was fatal to his claim and that he failed to set forth any basis for concluding that this available state remedy was inadequate. *See id.* at *14.  Further, the court rejected any argument that the defendants were required to notify the plaintiff about the availability of the Article 78 proceeding.  *See id.* at *14 n.13 (citing *Vialez v. N.Y. City Hous. Auth.*, 783 F. Supp. 109, 121 (S.D.N.Y. 1991)); *see also Ryan v. Carroll*, 67 F. Supp. 2d 356, 361 (S.D.N.Y. 1999).

As the case law makes clear, Article 78 name-clearing hearings are generally found to provide all of the process that a person in Plaintiff's position is due.  *See Guerra v. Jones*, 421 Fed. Appx. 15, 19 (2d Cir. 2011) (finding that an Article 78 hearing provides the requisite post-deprivation process thereby precluding the plaintiff's stigma-plus claim); *D'Allessandro v. City of Albany*, No. 04-cv-788, 2008 WL 544701, *13-14 (N.D.N.Y. Feb. 26, 2008) (holding that the

availability of an Article 78 proceeding to the plaintiff, "which is an adequate post-deprivation procedure and 'frequently function as name clearing hearings', means that there has been no constitutional violation"); *Poole v. Bd. of Trustees of Cayuga Comm. Coll.*, No. 96-cv-681, 1998 WL 661540, *7 (N.D.N.Y. Sept. 25, 1998).

Plaintiff argues that "there is no question that Plaintiff has been stigmatized by virtue of Defendants' refusal to schedule him to work." Dkt. No. 74-18 at 23. He argues that testing for "mental stability" alone is stigmatizing. *Id*. Plaintiff also argues that Article 78 would have only provided remedy if he had in fact been terminated, suggesting that such proceeding is somehow unavailable until such time as he is formally fired. *Id*. To the extent that permanently removing Plaintiff from the schedule is not akin to formally firing him, it would certainly constitute a constructive discharge. *See Bright-Asante v. Saks & Co.*, 242 F. Supp. 3d 229, 243 (S.D.N.Y. 2017) (holding that placing the plaintiff on indefinite suspension constitutes a constructive discharge); *Halbrook v. Reichhold Chems., Inc.*, 735 F. Supp. 121, 126 (S.D.N.Y. 1990). Courts have consistently found that the failing to avail yourself of a post-constructive discharge Article 78 proceeding, which was available to Plaintiff, is fatal to a procedural due process claim. *See Hoover v. County of Broome*, 340 Fed. Appx. 708, 710-11 (2d Cir. 2009) (holding that, assuming the plaintiff was constructively discharged, he was not entitled to a pre-deprivation remedy and, "[h]aving failed to utilize the adequate post-deprivation remedy of an Article 78 proceeding," the plaintiff's procedural due process claim was without merit) (citations omitted); *see also Dechberry v. N.Y.C. Fire Dept.*, 124 F. Supp. 3d 131, 159-60 (E.D.N.Y. 2015) (citing cases); *Maioriello v. N.Y.S. Office for People with Developmental Disabilities*, No. 1:14-cv-214, 2015 WL 5749879, *18 (N.D.N.Y. Sept. 30, 2015) (citing cases).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's liberty interest procedural due process claim.

**E.      New York State Constitution Claims**

In his complaint, Plaintiff alleges he was deprived of his property interest in continued employment and his liberty interest in his good name and reputation in violation of the Due Process Clause of the New York State Constitution.  *See* Dkt. No. 1-1 at ¶¶ 59-66.  "Where claims are brought pursuant to the New York State Constitution that mirror claims brought under Section 1983, courts in this Circuit have held that there is no private right of action on the state constitutional claims."  *Wright v. City of Syracuse*, No. 5:10-cv-661, 2014 WL 1293527, *18 (N.D.N.Y. Mar. 31, 2014) (citing cases).  Since Plaintiff's due process claims brought under the New York State Constitution mirror those brought pursuant to Section 1983, Defendants are entitled to summary judgment.

Plaintiff attempts to refute this established precedent by citing to *Morgan v. County of Nassau*, 720 F. Supp. 2d 229 (E.D.N.Y. 2010).  In *Morgan*, the court declined to dismiss the plaintiff's free speech claim brought under the New York Constitution.  In doing so, however, the court explained that the protections afforded by the State Constitution are greater than those afforded by the United States Constitution.  *See id.* at 243.  By contrast, courts have consistently dismissed due process claims brought under both the New York and United States Constitutions because the due process protections under both have been deemed coextensive.  *See id.*; *see also Oneida Indian Nation of N.Y. v. Madison County*, 665 F.3d 408, 427 n.13 (2d Cir. 2011) (citing cases); *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims brought under the New York State Constitution.

**F.      Article 78**

Plaintiff purports to bring claims under Article 78 of the CPLR.  Courts in this circuit have found that federal courts do not have the power to exercise supplemental jurisdiction over Article 78 claims.  *Singh v. Joshi*, 201 F. Supp. 3d 245, 250 (E.D.N.Y. 2016) (citing *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003); *Morningside Supermarket Corp. v. New York State Dep't of Health*, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006)).  But further yet, "district courts are unanimous that '[t]he very nature of an Article 78 proceeding presents . . . compelling reasons' for declining to exercise supplemental jurisdiction, even assuming it exists." *Id*.  The Court agrees, and declines to exercise supplemental jurisdiction over Plaintiff's Article 78 claim.

## IV. CONCLUSION

Upon careful consideration of the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 13, 2019
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

22